UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAUREN E. GILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:18-CV-1553-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Lauren E. Gillard ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

I. **PROCEDURAL BACKGROUND**

On July 8, 2013, Plaintiff applied for DIB, alleging that she had been unable to work since November 15, 2011. (Tr. 337-38). Her application was initially denied. (Tr. 172-77). On

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

November 20, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 180). On March 12, 2015, an ALJ held a hearing. (Tr. 65-91). On September 15, 2015, the ALJ issued an unfavorable decision. (Tr. 140-62). On September 22, 2016, the Appeals Council of the Social Security Administration granted Plaintiff's request for review of the ALJ's decision and remanded the case for further proceedings. (Tr. 163-68). The Appeals Council remanded the case to the ALJ to assess the opinion of the treating doctor, Shari Cohen, M.D., for further consideration of the opinion of Dr. James Reid, Ph.D., and for further consideration of Dr. Anne Winkler's opinions regarding Plaintiff's ability to engage in postural, work-related activities. The Appeals Council also directed the ALJ to obtain any additional evidence concerning Plaintiff's impairments to complete the administrative record, to further evaluate Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520a, to give further consideration to the RFC and provide rationale with specific references to the evidence; to further evaluate the opinions of Dr. Cohen, Dr. Reid, and Dr. Winkler; and to obtain supplemental evidence from a vocational expert.

The ALJ then held two additional hearings, one on October 13, 2017, and one on May 14, 2018. (Tr. 92-115, 116-28). On July 11, 2018, the ALJ issued a second unfavorable decision. (Tr. 12-64). On August 22, 2018, the Appeals Council declined to review the case. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

II.   **FACTUAL BACKGROUND**[2]

On March 12, 2015, Plaintiff testified at the first hearing before the ALJ as follows. (Tr. 67-93). Plaintiff was born on May 13, 1967. (Tr. 71). She has a master's degree in psychology.

---

[2] Because Plaintiff's arguments relate only to her physical impairments, the Court's discussion is focused primarily on her allegations regarding her physical impairments.

(Tr. 72). She has worked in the past as a care advocate for United Health Care and other companies, certifying patients for various levels of care, and as a private-practice psychotherapist writing evaluations. (Tr. 72-73). Plaintiff's problems began in 2011, when she began to have violent vomiting after eating even small amounts of food. She throws up between three times a week and four times a day. (Tr. 75). She also has abdominal pain every day. (Tr. 79-80). She also gets tremulous and shaky because she does not get enough calories. (Tr. 84). She has many limitations on what she can eat and is not allowed to have any fruit, fiber, or nuts. (Tr. 80). She went from doctor to doctor with them telling her there was nothing wrong with her, but then they discovered that her gallbladder was filled with infection, and when they did laparoscopic gallbladder removal, "all the poison in [her] gallbladder hit every organ and caused [her] liver to get scarred, caused [her] pancreas to get messed up and that's when [she] got so sick and [she] couldn't stop throwing up." (Tr. 81). She testified that they cleared the whole floor of all the patients and she was isolated in the ICU for ten days. (Tr. 81).

Plaintiff's toes are fused, and they hurt when they get cold. (Tr. 76). She also has Raynaud's, which causes her feet, hands, nose, gums, and mouth to get numb and cold, and her face, hands, and feet turn bluish purple. (Tr. 76-77). That happens about two or three times a week. (Tr. 76). She also has rheumatoid arthritis in her hand. (Tr. 77). She wears special gloves to increase circulation when that happens. (Tr. 77). Her hand problems make her unable to write and make it difficult to drive. (Tr. 77). Plaintiff has had fusions in her back, and she can sit for about two hours before getting up and can stand for about 15 to 20 minutes before getting up. (Tr. 78). She has difficulty walking, difficulty bending down, and pain twisting her body from side to side. (Tr. 78-79). Plaintiff also has anxiety, depression, fatigue, insomnia, and concentration problems. (Tr. 81-84). Plaintiff spends all day reclined in a chair. (Tr. 83).

On October 17, 2017, Plaintiff testified at a supplemental hearing before the ALJ as follows. (Tr. 94-115). Plaintiff throws up six to eight times a day, has extreme nausea, and cannot keep food down. (Tr. 97, 99, 106). Every time she breathes in, she feels like she is going to get sick. (Tr. 99). She also has daily diarrhea. (Tr. 105-06). There is no sign that she is going to get sick; it just happens. (Tr. 106). She has abdominal pain once or twice a week. (Tr. 104). Plaintiff has been diagnosed with coronary artery disease and has a history of heart attack; she reported that she had three heart attacks in eleven days. (Tr. 100-01). She takes nitroglycerin once or twice a week for extreme chest pain. (Tr. 101). She has difficulty with heart palpitations and her heart racing every day, when she exerts herself by walking, doing laundry, lifting, or bending down and straightening up. (Tr. 101-02). She had a pancreatic attack that was so severe that it broke her spinal fusion in half, which caused her to need another spinal fusion; that led to an MRSA infection that makes her ineligible for a heart transplant or pacemaker. (Tr. 100). Plaintiff has headaches for which she takes Excedrin Migraine. (Tr. 102). The headaches last 10 to 15 minutes at a time, and she cannot have any lights on when that happens. (Tr. 102). She has panic attacks and anxiety. (Tr. 103). She has a diagnosis of Raynaud's, which makes her hands get cold and turn purple, as well as her mouth. (Tr. 103). Her medications make her disoriented, dizzy and not able to walk a straight line; she also falls very easily. (Tr. 106). Also, she has an inability to remember things, and sometimes cannot finish a sentence because she forgets what she is talking about. (Tr. 106).

The record contains numerous treatment records, as well as several medical opinions regarding Plaintiff's mental and physical impairments. The Court will cite to specific medical records below, as needed to address the parties' arguments.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three,

the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 15, 2011, through her date last insured of December 31, 2015, and that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; cardiomyopathy and coronary artery disease; chronic functional syndrome; irritable bowel syndrome ("IBS"); major depressive disorder, alternately diagnosed as adjustment disorder with depressed mood and dysthymic disorder; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); and opioid abuse. (Tr. 18); The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 25). The ALJ found that Plaintiff had the following RFC:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a),[3] with the following additional limitations: she required a sit/stand option once every hour during an eight-hour workday, while remaining on task; could occasionally stoop, kneel, balance, crouch, and climb ramps or stairs; was unable to crawl or to climb ladders, ropes, or scaffolds; was unable to operate any foot control operations; was to avoid extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery; and was limited to occupations that involve only simple, routine, and repetitive tasks in a low-stress job, defined as requiring only occasional decision-making and only occasional changes in the work setting, with no contact with the public, only casual and infrequent contact with coworkers, and contact with supervisors occurring no more than four times per workday.

---

[3] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

(Tr. 29-30). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 52). At Step Five, relying on the testimony of a vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including representative occupations such as hand packer (Dictionary of Occupational Titles No. 559.687-014), production worker assembler (Dictionary of Occupational Titles No. 739.687-066); and inspector tester/sorter (Dictionary of Occupational Titles No. 521.687-086). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Act, from November 15, 2011, through December 31, 2015, the date last insured. (Tr. 52-53).

## V.   DISCUSSION

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 42 U.S.C. § 405(g); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ Conducted a Proper Physical RFC Assessment, and that Assessment is Supported by Substantial Evidence

Plaintiff argues that the ALJ's decision should be reversed because the ALJ's RFC analysis failed to account for any physical impairments other than those comprehended by orthopedic surgeon Dr. Schosheim's testimony. Specifically, Plaintiff argues that the RFC does not adequately account for Plaintiff's severe, non-orthopedic physical impairments—coronary artery disease, chronic functional syndrome, and irritable bowel syndrome. Plaintiff argues that instead of relying on medical opinion evidence to evaluate the effects of those impairments, the ALJ inappropriately "played doctor" by relying on his own interpretations of the treatment records and test results. Plaintiff does not state what limitations the ALJ should have included in the RFC but did not, nor does Plaintiff cite any testimony or medical evidence in the record to support her argument that the RFC did not adequately account for her non-orthopedic impairments.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ

must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

Based on a careful review of the record, the Court finds that the ALJ's determination that Plaintiff had the RFC to perform sedentary work, with several additional limitations, was supported by substantial evidence, including medical evidence, addressing Plaintiff's ability to function in the workplace. The Court also finds that the ALJ did not impermissibly "play doctor" in making the RFC finding, but properly determined the RFC based on all of the evidence.

First, the Court notes that this is not a case in which the ALJ made an RFC finding in the absence of all opinion evidence, relying solely on his or her own interpretation of the objective medical evidence, nor is it a case where the ALJ declined to give any weight to any of the opinions in the record. The record in this case contains five different medical opinions regarding Plaintiff's physical impairments.[4] The ALJ analyzed each of these opinions in detail and weighed them over

---

[4] The record also contains five different opinions regarding Plaintiff's mental impairments. However, as Plaintiff does not challenge the mental RFC, the Court will not address those opinions.

five pages of his decision, giving "substantial evidentiary weight" to the May 2018 opinion of medical expert and orthopedic surgeon Dr. Peter Schoscheim, which was consistent with the RFC (Tr. 38, 121-23); "partial weight" to the August 2015 opinion of medical expert Dr. Anne Winkler, which contained fewer restrictions than the RFC (Tr. 39, 1192-1200); "little evidentiary weight" to the February 2015 opinion of treating physician Dr. Shari Cohen, which contained more restrictions than the RFC (Tr. 39-41, 943-46); "very little evidentiary weight" to the September 2017 opinion of Dr. Cassandra Edwards, which contained more restrictions than the RFC (Tr. 41-42, 1474-78); and "very little weight" to the opinion of impartial medical expert Dr. Eyanson, which opinions contained more restrictions than the RFC (Tr. 42-43). Plaintiff does not discuss any of these opinions aside from that of Dr. Schoscheim.

Plaintiff argues that because the physical RFC is consistent with the opinion of Dr. Schoscheim and Dr. Schoscheim only accounted for Plaintiff's orthopedic limitations, the RFC did not account for her non-orthopedic impairments. Plaintiff argues that with regard to her non-orthopedic impairments, the ALJ impermissibly "played doctor" by making her own independent medical findings. *See Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (the ALJ is not permitted to "play doctor" by making his or her own independent medical findings).

As a preliminary matter, it is not at all clear to the Court that Dr. Schosheim's opinions were restricted to the effects of Plaintiff's orthopedic impairments. At the hearing at which Dr. Schoscheim testified, the ALJ stated that the impetus for the hearing was that there were "so many different opinions that I'm hoping I would get one that would be cohesive among all of them . . ." (Tr. 118). Dr. Schosheim testified that he had reviewed "the file," and there is no indication that he did not consider all of her records through the date last insured, including those related to non-orthopedic impairments. (Tr. 120-21). Although he only specifically mentioned musculoskeletal

and neurological findings in his testimony, he articulated a full physical RFC assessment. (Tr. 123). Notably, he included a statement indicating that she had no "visual or communicative limitations," indicating that he had considered matters other than her orthopedic impairments. (Tr. 123). He also opined that the other RFCs were inconsistent with the record. (Tr. 123). A reasonable reading of the record is that Dr. Schoscheim reviewed Plaintiff's medical records as a whole and determined that, in his medical opinion, none of her physical impairments imposed limitations not accounted for by his opinion.

However, even assuming, *arguendo*, that Dr. Schoscheim's opinion did not account for Plaintiff's non-orthopedic impairments, Plaintiff's argument ignores the fact that the ALJ considered, and gave some weight to, other medical opinion evidence from sources who offered opinions based on all of Plaintiff's medical records, including records concerning both her orthopedic and non-orthopedic impairments. For example, the ALJ gave partial weight to the opinion of Dr. Winkler, an internal medicine and rheumatology specialist who reviewed Plaintiff's medical records through mid-2015 (a period that included a most of the evidence dated prior to the date last insured) and found that Plaintiff's impairments were status post lumbar spine fusion for DDD, hypertension, functional bowel, functional bladder, drug abuse, Raynaud's and psychiatric issues. She found Plaintiff could sit for three hours at a time and for eight hours in a workday; could stand for one hour at a time and four hours total in a workday; and could walk for one hour at a time and four hours total in a workday; and various postural limitations. (Tr. 1192-96). She also found that Plaintiff could perform activities like shopping, walking at a reasonable pace on an uneven surface, using standard public transportation, preparing simple meals, and sorting, handling, or using paper and files. (Tr. 1197). Dr. Winkler did not find that Plaintiff had limitations due to her non-orthopedic impairments that were not accounted for by her assessment. Because

Dr. Winkler's opinions predated some evidence related to Plaintiff's stress-induced cardiomyopathy and non-obstructive coronary artery disease, the ALJ reasonably gave only partial weight to this opinion and assigned a more restrictive RFC than was reflected in it. (Tr. 39). However, this opinion did provide some medical support for the ALJ's finding that the RFC accounts for Plaintiff's non-orthopedic impairments, particularly her gastrointestinal impairments. The ALJ also considered and gave "little weight," though not no weight, to the other opinions in the record, which also addressed Plaintiff's non-orthopedic impairments.

In addition to the medical opinion evidence in the record, the ALJ's determination that the sedentary RFC with additional limitations adequately accounts for Plaintiff's gastrointestinal and cardiac impairments is also supported by other evidence, including treatment records suggesting that her symptoms were not as severe or frequent as she claimed, evidence showing Plaintiff's noncompliance with some of her treatment providers' recommendations, the objective medical evidence in the record, and several inconsistencies between Plaintiff's testimony and the medical and other records.

First, the RFC assessment is supported by the ALJ's analysis of Plaintiff's reported symptoms and course of treatment, which suggest that Plaintiff's cardiac and gastrointestinal symptoms were not as severe as she alleged. As the ALJ noted, Plaintiff did often complain to her treatment providers of abdominal pain, nausea, constipation, diarrhea, and/or vomiting, with complaints of vomiting especially in early 2012 and in 2015. (Tr. 33-35, 49, 556, 572-82, 598, 670, 677, 698, 715, 724, 732, 757, 759, 761, 765, 767, 769, 813, 851, 917, 919, 921, 923, 925, 933, 1118, 1239-40, 1294, 1297, 1299, 1302-03, 1350, 1409). However, the ALJ also reasonably considered that—contrary to Plaintiff's testimony that she is nauseated every time she breathes in and that she usually throws up several times a day—the record suggests that Plaintiff's symptoms

were less consistent and more intermittent than she described. (Tr. 35). For example, between June 2012 and October 2014, although Plaintiff sometimes reported nausea and/or abdominal pain, Plaintiff rarely or never reported vomiting or to her treatment providers, despite many visits; at some visits she denied abdominal pain and bowel-related symptoms or described her symptoms as "mild" or "intermittent" (Tr. 674, 698, 715, 717, 724, 741, 759, 765, 769, 867, 911, 925, 931, 1079, 1409). The ALJ also reasonably noted that Plaintiff reported some improvement with medications such as nortryptiline and Zofran and reported improvement in her abdominal pain after she underwent a hysterectomy. (Tr. 35, 49, 741, 911, 919, 978). With regard to Plaintiff's heart condition, the ALJ also correctly noted that after Plaintiff was diagnosed with stress-induced cardiomyopathy in June 2015, she reported in September 2015 that she had only infrequent episodes of chest discomfort, relieved by baby aspirin, and "some intermittent shortness of breath on exertion," and she denied palpitations. (Tr. 33, 1296-97). Although Plaintiff reported significant shortness of breath with exertion in December 2015 and January 2016, her cardiologist indicated that he did not believe that her shortness of breath was cardiovascular in etiology. (Tr. 1291-94). The ALJ reasonably considered these treatment notes finding that the Plaintiff's allegations regarding the severity and frequency of symptoms were not fully consistent with the evidence of record and thus would not impose additional limitations beyond those described in the RFC. (Tr. 35).

Second, the ALJ properly considered that Plaintiff's noncompliance with treatment recommendations suggests that her gastrointestinal symptoms were not as frequent or intense as she claimed. (Tr. 50-51). As the ALJ noted, multiple providers indicated that Plaintiff's gastrointestinal symptoms were related to her use of narcotic medication and suggested she decrease her narcotic medication use, and one of her physicians terminated care with her because

14

she had been getting pain medications from multiple doctors and her drug abuse was getting to the point of addiction. (Tr. 49-51, 688-90, 697-98, 717, 724-26, 735, 972, 1239, 1409). However, the record does not reflect that Plaintiff made any efforts to reduce her narcotic medication. As the ALJ noted, it does not appear that Plaintiff followed up with her pain management physician's suggestions for non-narcotic treatment, such as epidural steroid injections, physical therapy, or neurology evaluation. (Tr. 50, 971-72). She also declined her pain management physician's offer for a neurology referral, stating that she would find a provider herself. (Tr. 50, 972). Plaintiff's resistance to treatment recommendations that her physicians suggested would alleviate her symptoms was a proper consideration for the ALJ in assessing the intensity and frequency of those symptoms. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (ALJ properly considered the plaintiff's "resistance to some suggested courses of treatment" in assessing her subjective symptoms); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Third, the ALJ reasonably considered the numerous normal or mild objective findings in the record and found they did not fully support Plaintiff's allegations regarding the frequency and intensity of her symptoms. (Tr. 33-35). For example, as the ALJ noted, while Plaintiff sometimes had tenderness to palpation in her abdomen, she generally had no abdominal distension, normal bowel sounds, no guarding or rigidity on examination, and only slight bloating. (Tr. 35, 672, 676, 700, 716, 725, 743, 1056, 1080, 1097, 1099, 1133). The ALJ also reasonably noted that although Plaintiff suggested that she throws up several times a day and cannot absorb any nutrients or keep food down, her BMI scores were within the normal range. (Tr. 35, 75, 716, 725, 743, 1017, 1099, 1131, 1133). The ALJ also noted numerous imaging results showing mild or normal findings, including a 2015 CT scan that showed no bowel obstruction and no evidence of active disease in

the abdomen. (Tr. 34, 1362). The ALJ also reasonably noted that although Plaintiff was diagnosed with stress-induced cardiomyopathy in June 2015, at follow-up visits it was noted that her echocardiogram showed normal left ventricular function with no significant valvular heart disease normal findings (Tr. 1291); that she had normal oxygen saturation (Tr. 1294); and that her blood pressure and heart rate were well-controlled (Tr. 1294, 1296). Moreover, her physicians found on examination that she had normal heart rate and rhythm, no gallops, no clicks, no rubs, no murmur, and no extra sounds, and no edema. (Tr. 32-33, 1291-1300). Plaintiff's physicians, including her cardiologist and primary care physician, also frequently noted in their examinations that Plaintiff was in "no acute distress" and was "well-nourished" (Tr. 757, 759, 761, 911, 921, 923, 927, 931, , 933, 1133, 1292, 1295, 1297). Although an ALJ may not reject a claimant's statements about the intensity and persistence of her symptoms "solely because the available objective medical evidence does not substantiate" those statements, the regulations recognize that objective medical evidence is "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529 (c)(2). *See Goff v. Barnhart*, 421 F.3d 785, 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding RFC finding that was based on largely mild or normal objective findings).

Fourth, the ALJ reasonably considered several other inconsistencies between Plaintiff's testimony and the record. (Tr. 51-52). As the ALJ noted, Plaintiff's allegation that she had a pancreatic attack that was so severe that she "broke" her spinal fusion was not supported by any treatment notes or imaging in the record. (Tr. 52). Plaintiff's allegation that she had three heart

16

attacks within an eleven-day period was also inconsistent with the record, which showed only a single myocardial infarction occurring in April 2016 (after the date last insured). (Tr. 52, 100-01, 1446-50). Similarly, Plaintiff's allegation that she developed a MRSA infection in her heart that rendered her ineligible for a heart transplant or pacemaker implantation was not supported by the record, which did not contain any medical evidence documenting the presence of MRSA at any time prior to the date last insured and which did not show that any treatment provider ever suggested a heart transplant. (Tr. 52, 100). Additionally, Plaintiff's testimony that her laparascopic gallbladder removal led to liver scarring and pancreas problems that caused her to start vomiting and that required her to be isolated in the ICU for ten days is not supported by the record, which indicates that she was hospitalized for only two days for her laparoscopic gallbladder removal and was discharged home, feeling well, and told to follow up with her primary care physician in one to two weeks (Tr. 81, 572). It was proper for the ALJ to consider these inconsistencies in evaluating Plaintiff's statements regarding the intensity and frequency of her symptoms. Additionally, the ALJ reasonably found that Plaintiff's allegations of frequent vomiting without warning were not entirely consistent with her statements in her function report that she could drive, go out alone, and go shopping in stores. (Tr. 51, 425-26). The ALJ properly considered all of these inconsistencies in assessing Plaintiff's allegations regarding the intensity and frequency of Plaintiff's symptoms and the extent to which they would affect her RFC. *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (noting that an ALJ may consider "inherent inconsistencies or other circumstances" in assessing subjective complaints) (quotation marks omitted); *Rogers v. Astrue*, 479 F. App'x. 22, 23 (8th Cir. 2012) (affirming the ALJ's decision and noting that the ALJ had discounted the plaintiff's subjective complaints based on inconsistent statements the plaintiff had made).

In her brief, Plaintiff includes several block quotes in which the ALJ discussed the treatment records and objective medical evidence of record. and then states that these quotes "demonstrate the invalidity of 'playing doctor,' for what we have in fully display is the agency adjudicator asserting untutored speculation as the basis for potentially resolving problematic medical data and documentation." Pl's Br., Doc. 11, at 8-10. However, as discussed above, there is nothing inappropriate about the ALJ discussing and considering the objective medical evidence. Moreover, as also discussed above, the ALJ did not rely solely on that evidence in assessing Plaintiff's RFC, but also on the multiple medical opinions in the record and the inconsistencies the ALJ found between Plaintiff's testimony and the record.

Plaintiff also argues that the ALJ's decision does not contain "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as required by Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (July 2, 1996). The Court disagrees. The ALJ discussed each of Plaintiff's impairments at length and adequately explained how the medical and nonmedical evidence affected the RFC. (Tr. 29-52). However, even assuming, *arguendo*, that the ALJ should have been more explicit in discussing his determination that Plaintiff's non-orthopedic impairments were adequately accounted for by the RFC, Plaintiff has not shown that that the ALJ's failure to do so affected the outcome of the case. The Court "will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique when it is unlikely it affected the outcome." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (quotation omitted). *See also Depover v. Barnhart*, 349 F.3d at 563, 567-68 (8th Cir. 2003) (no remand required where the ALJ did not include an explicit function-by-function narrative discussion but clearly considered the relevant functions and implicitly found no

18

limitations in them).  Here, in light of the ALJ's extensive discussion of Plaintiff's non-orthopedic impairments, it is abundantly clear that the ALJ considered them and decided that they did not warrant additional limitations in the RFC. Moreover, as discussed above, Plaintiff makes no attempt to explain what additional limitations the ALJ should have included or might have included had he conducted a more explicit narrative discussion. Thus, no remand is required.

In sum, the Court finds that the ALJ conducted a proper analysis of Plaintiff's RFC, and the RFC is supported by substantial evidence. The ALJ did not impermissibly "play doctor," but properly considered the objective evidence along with the other evidence, including medical opinion evidence along with the objective medical evidence and other evidence in coming to an RFC assessment. Although Plaintiff certainly experienced pain and other symptoms from her non-orthopedic impairments, the Eighth Circuit has repeatedly found that "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (quoting *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996).  It was not unreasonable for the ALJ to find that Plaintiff's pain, nausea, discomfort, and other symptoms were adequately accounted for by a sedentary RFC with several other limitations, including a sit/stand option.

The Court acknowledges that the record contains conflicting evidence regarding the extent of Plaintiff's non-orthopedic impairments, some of which might  support limitations greater than those assessed by the ALJ. However, the ALJ reasonably weighed the evidence in a manner consistent with the evidence and the regulations. The ALJ's decision fell within the "zone of choice," and it is not the role of this Court to reweigh the evidence presented to the ALJ. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

*/s/ Shirley Padmore Mensah*
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of March, 2020.